IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MAURICE LEE MOORE, III,**

    **Petitioner,**

    v.                                         **Civil no. 3:05-cv-45**
                                                      **Crim no. 3:03-cr-61(1)**
                                                      **(Judge Broadwater)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**REPORT AND RECOMMENDATION THAT PETITION BE DENIED AS TO TWO GROUNDS, SETTING AN EVIDENTIARY HEARING ON GROUND TWO B, APPOINTING COUNSEL FOR THE EVIDENTIARY HEARING AND PROVIDING THAT COUNSEL, PARTIES AND WITNESSES MORE THAN 40 MILES FROM THE WHEELING POINT OF HOLDING COURT MAY APPEAR BY VIDEO OR TELEPHONE CONFERENCING**

On May 17, 2005, the *pro se* petitioner, Maurice Lee Moore, III, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On June 3, 2005, I determined that summary dismissal of the petition was not warranted and directed the respondent to file an answer. The respondent filed an answer on November 1, 2005, and petitioner filed a reply on January 31, 2006. Accordingly, this case, before me for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., is ripe for review.

## I. Procedural History

**A  Conviction and Sentence**

Petitioner was indicted in the United States District Court for the Northern District of West Virginia on December 3, 2003. On February 19, 2004, petitioner pled guilty to Count 12

of the thirteen count indictment.[1]  In his plea agreement, petitioner did not waive his right to appeal his conviction and sentence or to pursue collateral review.  On May 20, 2004, petitioner was sentenced to a term of imprisonment of 160 months.

## B.  Direct Appeal

Petitioner did not file a direct appeal of his conviction and sentence.

## C.  Federal Habeas Corpus

### Moore's Contentions

On May 17, 2005,  petitioner initiated this case under § 2255.  In the petition, the petitioner asserts the following grounds for relief:

(1) Incorrect drug weight attributed to defendant due to unconstitutional addition of relevant conduct weights as enhancements; and

(2) Ineffective assistance of counsel because

(A) counsel gave him wrong or outdated advice; and

(B) counsel failed to file a direct appeal.

### Government's Response

In its response, the respondent asserts that petitioner's § 2255 motion should be denied because:

(1) petitioner's ineffective assistance of counsel claims are without merit as the record does not show that petitioner ever requested counsel file an appeal or that counsel was ineffective for giving wrong or outdated advice;

---

[1] Count 12 charged petitioner with possession with intent to distribute 4.08 grams cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C).

(2) petitioner failed to raise his § 2255 issues on direct appeal; and

(3) petitioner's claim that his sentence was based on uncharged conduct is without merit as Booker is not retroactive to cases on collateral review and because the Court made no finding of fact which increased petitioner's sentence beyond the stipulation in the plea agreement.

**Moore's Reply**

On January 31, 2006, petitioner filed a reply to the respondent's response. In his reply, petitioner asserts that:

(1) he verbally requested counsel file a notice of appeal and evidence of that request will not appear on the record;

(2) petitioner failed to raise his § 2255 issues on direct appeal because counsel was ineffective for not filing a notice of appeal;

(3) counsel gave petitioner bad advice about his chance of success on appeal, on the possibility of a concurrent sentence, with regard to a two-point gun enhancement, and by telling the Court that petitioner did not want to donate money to the Charles Town Police force; and

(4) his rights under the Sixth Amendment were violated when the Court sentenced him to 103.08 grams, instead of the 4.08 grams listed in Count 12 of the indictment.

## II. Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought

pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## A. Ground One

In ground one, petitioner asserts that his Sixth Amendment rights were violated when the sentencing judge considered the weights from the 12 dismissed charges in determining that petitioners' relevant conduct was 103.08 grams. Petitioner asserts that his relevant conduct should have been 4.08 grams, the amount charged in Count 12 of the indictment. Although petitioner cites no caselaw in support of this claim, I find that petitioner is making a claim pursuant to United States v. Booker, 543 U.S. 220 (2005).[2]

However, this claim is foreclosed by the Fourth Circuit's decision in United States v. Morris, 429 F.3d 65 (4th Cir. 2005). In Morris, the Fourth Circuit found that Booker has not been made retroactively applicable to cases on collateral review. Morris at 72. Thus, Booker is inapplicable to cases that became final prior to the issuance of the Supreme Court's decision in those cases. Id. Petitioner was sentenced on May 14, 2004, and he did not file a direct appeal.

---

[2] In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In June of 2004, the Supreme Court applied this ruling to the State of Washington's sentencing scheme and found that the imposition of state sentencing enhancements - based solely on factual findings by the court - violated a defendant's Sixth Amendment rights because the facts supporting the findings were neither admitted by the defendant nor found by a jury. See Blakely v. Washington, 542 U.S. 296, 301-303 (2004). In addition, the Court expressly noted that it was not considering the constitutionality of the federal sentencing guidelines. Id. at 305, n 9. Subsequently, however, the Supreme Court took up this issue in United States v. Booker.
     In Booker, the Supreme Court held that Blakely applies to the federal sentencing guidelines, and therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. Booker, 543 U.S. at 243. Additionally, the Court held that two provisions of the statute creating the guidelines system must be excised to make them compatible with the Sixth Amendment, thereby rendering the guidelines advisory. Id. at 258-261.

4

Booker was decided on January 12, 2005.  Accordingly, Booker is not available to petitioner on collateral review.[3]

**B.  Ground Two**

In ground two, petitioner asserts that counsel was ineffective to failing to file an appeal and for giving him wrong or outdated advice.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688.  The second prong requires the petitioner to show that the deficient performance prejudiced the defense.  Id. at 687.   In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  Id. at 689-90.  Moreover, there are no absolute rules in determining what is reasonable performance.  See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case

---

[3] Moreover, the undersigned notes that in the plea agreement, petitioner stipulated that his relevant conduct was 103.08 grams and that the court made no findings of fact which increased petitioner's sentence above what was appropriate for the stipulated amount.  See Doc. 52 at ¶ 9.

5

and at the time of counsel's conduct). Accordingly, the undersigned will review petitioners' ineffective assistance of counsel claims with these principles in mind.

**1. Failure to File an Appeal**

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478.

In this case, petitioner concedes that he consulted with his attorney about filing an appeal. However, petitioner asserts that he requested his attorney file an appeal, but that his attorney refused to do so because his attorney did not believe an appeal would be successful. In those circumstances, counsel would clearly be ineffective. See Peak, supra. In response to this

6

argument, the government has suggested that petitioner's claim should be dismissed because there is no evidence in the record to show that petitioner ever made such a request. However, the government was not privy to the confidential discussions that took place between the petitioner and his attorney. Moreover, the government has failed to provide any information from the petitioner's attorney regarding what instructions, if any, he received regarding an appeal.

Accordingly, because the petitioner's motion and the Government's response do not conclusively establish that petitioner is entitled to no relief, I find that an evidentiary hearing is necessary to determine whether petitioner requested his attorney file an appeal and whether counsel ignored or refused such instructions. See 28 U.S.C. §2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

### 2. Wrong or Outdated Advice

In this ground, petitioner asserts that his counsel was ineffective for giving him wrong or outdated advice with regard to his chance of success on appeal, the possibility of a concurrent sentence, a two-point gun enhancement, and by telling the Court that petitioner did not want to donate money to the Charles Town Police force.

a. Chance of Success on Appeal

With regard to petitioners' chance of success on appeal, that issue is an integral part of

7

petitioners' ineffective assistance of counsel claim for the failure to file an appeal.[4] Therefore, the undersigned will incorporate this issue into the previous ground and defer making a recommendation as to this claim until after the evidentiary hearing.

b.  Sentence Advice

Petitioner asserts that counsel told him that all of his violations must run consecutive to the new charges.  However, petitioner noticed in the Pre-Sentence Investigation Report (PSI) that it stated:

> Guideline Provisions: Pursuant to U.S.S.G. § 5G1.3(c), <u>Imposition of a Sentence on a Defendant subject to an undischarged term of imprisonment</u>, the sentence for the instant offense may be imposed to **run concurrently, partially concurrent, or consecutively** to the prior undischarged term of imprisonment to achieve reasonable punishment for the instant offense.

Reply at 6 (Emphasis in original).  Therefore, petitioner asserts that counsel gave him bad advice.

However, even assuming counsel's advice was wrong, petitioner has failed to show how he was prejudiced by it.  Petitioner does not allege that but for the bad advice, he we would have rejected the plea and proceeded to trial.  In fact, the undersigned believes that just the opposite was likely to occur.  If petitioner was willing to accept the plea when he believed that his sentences had to run consecutively, the fact that his sentences could actually run concurrent would have likely induced petitioner to accept the plea.  Indeed, petitioner's sentence was actually imposed "concurrent with all state or federal sentences,"[5] so the fact that counsel may

---

[4] Counsel allegedly told petitioner that he "would not get any relief whatsoever [on appeal], and [that] the petitioner was lucky to get the sentence he received in the first place."  Reply (Doc. 91) at 5.  This was apparently the explanation counsel gave for refusing to file an appeal.

[5] Amended Judgment (Doc. 80) at 2.

have initially misadvised petitioner with regard to this issue was clearly not prejudicial and petitioner is entitled to no relief on this claim.

### c. Two-Point Gun Enhancement

Petitioner asserts that he was given a two-point gun enhancement. Petitioner asserts that he requested counsel "take care of this enhancement and see what could be done to have it removed." Reply at 6. Counsel told petitioner that the two-point gun enhancement would be discussed at sentencing and there was nothing he could do before that time to have it removed. Id. However, when petitioner received his copy of the PSI, he noted that the PSI stated "[a]fter a review of the investigative material, and an interview with the case agent, it does not appear as though the defendant used or possess the firearm during this offense." Id. Therefore, petitioner asserts that because the enhancement was removed prior to sentencing, counsel gave him bad advice.

As in the previous ground, even if counsel misadvised him as to this claim, petitioner cannot show that he was prejudiced by the misadvice. To the extent that the government sought a weapons enhancement, petitioner's PSI determined that such an enhancement was inappropriate and petitioner did not receive the enhancement. Thus, petitioner was not prejudiced by counsel's failure to seek removal of it prior to sentencing or by advising petitioner that such action could not be done.

### d. Donation of Money

In this ground, petitioner asserts that at his sentencing hearing, the government asked him if he would be willing to donate money to the Charles Town Police Force. However, rather than consult with petitioner, counsel stated that petitioner did not wish to donate his money in that

manner because he could prove that petitioner's money was not "drug money." Defendant asserts that he tried to get counsel's attention during this exchange, but that counsel would not acknowledge him. Then, at the time of imposing sentence, the sentencing judge stated "Mr. Moore, you don't want to donate your money, but you want me to sentence you to the low-end of the guidelines." Reply at 7. Thereafter, petitioner was sentenced to 160 months imprisonment, rather than the 151 months at the low-end of the guidelines.

In reviewing this claim, it is important to note that although represented by counsel, petitioner could have, at any time, clarified his wishes to the Court. Petitioner was not required to sit idly by and watch counsel do something of which he did not approve or agree. Especially something that petitioner asserts contributed to a longer sentence. Nevertheless, a review of petitioner's sentencing transcripts shows that petitioner's recitation of the facts is not entirely accurate. The sentencing transcripts show that the following exchange took place with regard to this issue:

> **THE COURT:** We would then move to the Rule 32 inquiry concerning statement by the defendant, defense counsel, in aid of sentencing alternatives. And, Mr. Moore, at this point in time, if you so desire, just like your right to a criminal trial, you may exercise or give up your right to make a statement for the Court. Do you wish to make a statement concerning sentencing?
>
> **THE DEFENDANT:** No, Sir.
>
> **THE COURT:** Very well. And Mr. Kornbrath, on behalf of the defendant?
>
> **MR. KORNBRATH:** As the Court realizes, this is the second federal sentence Mr. Moore faces for drug dealing activity. It is going to be a substantial sentence because

he's now a career offender. As paragraph 120 of the report indicates, the Court at least has discretion to consider either a concurrent or partially concurrent sentence to the supervised release violation he's presently serving. In regard to the recommendation for a particular facility, Mr. Moore wanted me to share with the Court that he wishes to go to FCI Gilmer here in West Virginia, mainly because of the vocational opportunities there. It is a fairly new facility that has some sophisticated Unicore (sic) programs that he hopes to take advantage of. Thank you, Judge.

**THE COURT:** Very well. And Mr. Mucklow on behalf of the Government?

**MR. MUCKLOW:** There was one issue that I didn't address in the presentence report, and I apologize to the Court and to the defendant for bringing it up now. We apparently overlooked the seizure of--I overlooked, the seizure of $1540 and $618 at the time of the execution of the search warrant. And I would like to ask of the defendant at this point whether he would be willing to forfeit that--those moneys to the Charles Town Police Department? I don't know if he's---

**MR. KORNBRATH:** Your Honor, this issue came up in the supervised release violation, and we provided the Government with various checks issued by Mr. Moore's employer at the Charles Town Race Track. I think his position is that he can make a showing that at least some of the proceeds are from legitimate sources.

**THE COURT:** He was living off the drug sources and saving his legitimate money off to the side?

**MR. KORNBRATH:** We're not denying that he was involved in ongoing drug dealing

11

activity.

**THE COURT:** That's what he's trying to tell me. He was spending his drug money, but he was saving his legitimate money.

**MR. KORNBRATH:** He can show a legitimate source for some of the money seized, Judge.

**THE COURT:** Okay, you know, I think I understand where he is here. And I'm not going to give him the whole loaf. But you're standing up on one side asking for leniency under a concurrent sentence scheme, and then he's turning around and telling me exactly what I have said, that he spent his drug money, but he saved his legitimate money. And I guess the word that comes to my head here on Monday afternoon is, let's [not] B. S. around. You know, get with it. Either give it up or fight it like heck, but don't come in here asking me for leniency if you are going to maintain what I anticipate here is a partially--just as you said, he can partially show what funds he got from legitimate source, is a partially ridiculous argument.

**MR. KORNBRATH:** Judge, first of all, I had no notice of this argument. Second of all--

.

**THE COURT:** Mr. Kornbrath, you're his counsel. You get to go home today. He's the one that told you to do this. So, you advanced his argument. But that's what we're asking. Give me all the benefits over here, but, Judge, I saved all my good money and put it off to the side. I mean, hey, if I was down there in your position, I'd be wondering what to do, too. And I'm sure if you were up here in mine, you would be trying to figure out why

12

we're trying to take the whole loaf of bread out here today. So, I gather there's a problem with doing that.

**MR. MUCKLOW:** Well, and I do apologize. I should have addressed this with Mr. Kornbrath earlier. I did not. It is my fault. But the Charles Town Police Department does have those amounts of the defendant's money. And if he is claiming some was from legitimate and some wasn't, if he would be willing to forfeit a portion of those moneys, then we would probably be satisfied, if it is a reasonable portion. I raised it now just to see what his position was going to be.

**THE COURT:** We know his position and we're moving on to other things, and you can use other methods to attempt to get part or all of the money.

Sentencing Transcripts (hereinafter Trans.) at 5-10.

After this exchange took place, the parties discussed specific factors that might mitigate petitioners' sentence, such as cooperation, truthfulness, and acceptance of responsibility. Then later, when imposing sentence, the Court stated:

**THE COURT:** Very well. Mr. Moore, if you would please stand for imposition of sentence? First of all, I am going to stick with the sentencing objectives that I have previously discussed with the Probation Officer here. However, I think you understand there are Judges who would have probably maxed you out for the kind of, I only spent my illegal money, but I saved every dollar of my honest money. However, if we sentence people for stupidity, you probably wouldn't have got back out the first time. That's just the bottom line. You have chosen your life, right or wrong. It is your bed. You're going to

13

have to lay down in it.

The Court finds the defendant's involvement in the instant offense is obviously one of a serious nature. A review of his criminal history reveals recurring arrests for drug violations. The defendant committed the instant offense within one month after his release from the Federal Bureau of Prisons on another federal felony drug charge. It appears as though all attempts to curtail his criminal activities have failed. However, the Court does consider in reference to imposition of a sentence in this case, that he has been incarcerated since September of 2003 in reference to a supervised release revocation proceeding in the original federal drug charge. That resulted in a 36-month sentence by imposition in October. He has been held pursuant to serving that particular sentence from that time until today's date, approximately nine months. The Court also takes notes that even though he has been placed under federal detainer for the indictment in this particular case, the Court is not inclined to give him credit for time served since the indictment was returned upon him. And as well, is not going to give him the minimum amount of time, but is going to factor in a sentence higher than the absolute minimum in this case, as well as taking into consideration the nine months he's already spent in giving him concurrent sentencing from today's date forward, which is about what will be about one-half of his sentence under the 36-month revocation proceeding. Therefore, the Court concludes that a sentence of 160 months, closer to the lower end of the Guideline range, but taking into consideration what the Court has already set forth on the record, will be necessary and adequate to address the sentencing objectives of punishment, incapacitation, and general deterrence. And the Court is utilizing that concurrent sentence after today's date in

reference to Chapter 5G1.3(a) of the Sentencing Guidelines. Or is that 3(c), Mr. Reid?

**MR. REID:** Subsection C., Your Honor.

**THE COURT:** Subsection C. The defendant's involvement in the instant offense justifies a need for corrective treatment that can best be served by a term of incarceration followed by a term of supervised release. This will enable the probation office to monitor the defendant's activities upon release into the community. To ensure that it will not revert to a criminal lifestyle.

Trans. at 10-12.

Clearly, the issue as to whether petitioner would donate his "drug money" was discussed during his supervised release proceedings. At that time, petitioner argued that some of the seized money was from legitimate sources and should not be forfeited. It was not unreasonable for defense counsel to assert the same argument at sentencing. Moreover, defense counsel never argued that petitioner would not donate money. Defense counsel merely argued that some of petitioner's money was from legitimate sources and should not be considered "drug money."

Moreover, when sentencing the petitioner, the sentencing judge stated that while some judges might "max petitioner out" for not donating his money, he was not going to do that. Instead, the Court sentenced petitioner just above the low end of the guidelines and ran petitioners' federal sentence concurrent with the remainder of his supervised release term. Additionally, in exceeding the low end of the guidelines, the sentencing judge cited the seriousness of the crime, petitioner's extensive criminal history, and his past failure to rehabilitate. There is nothing in the record to suggest that if petitioner had donated his money to the Charles Town Police Force, his sentence would have been any less.

Finally, I also note that even if counsel had been deficient for failing to consult with

15

petitioner prior to making his argument, petitioner does not assert that but for that deficiency, he would not have pled guilty. Accordingly, I find that counsel was not deficient as to this claim, and even if he were, petitioner suffered no prejudice. Thus, this claim should be denied.

### III. Recommendation

The undersigned recommends that the Court enter an Order **DENYING** petitioner's § 2255 motion as to:

- Ground One - incorrect drug weight attributed to defendant due to unconstitutional addition of relevant conduct weights as enhancements;
- Ground Two A - counsel was ineffective for giving petitioner wrong or outdated advice with regard to sentence advice, the two-point gun enhancement and the donation of money.

However, the undersigned will hold an evidentiary hearing as to Ground Two B -- ineffective assistance of counsel for failing to file a direct appeal -- on **June 7, 2006** at **10 a.m.** at the Wheeling point of holding court. Moreover, the undersigned will defer making a recommendation as to whether counsel was ineffective in his advice regarding an appeal until after the evidentiary hearing.

**Michael Olejasz** is appointed to represent petitioner at the evidentiary hearing solely for the purpose of determining whether petitioner instructed his counsel to file a direct appeal.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such

16

Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner and any counsel of record.

DATED: April 25, 2006.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE